# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JAMES BOLEY, | ) |
|       Plaintiff, | ) ) ) |
| v. | )    No. 4:19-cv-02519-JAR |
| RICHARD JENNINGS, et al., | ) ) ) |
|       Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff James Boley for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 3). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $9.13. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of his motion to proceed in forma pauperis, plaintiff has submitted a certified inmate account statement. (Docket No. 4). The account statement shows an average monthly deposit of $45.64. The Court will therefore assess an initial partial filing fee of $9.13, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the

plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff is a pro se litigant currently incarcerated at the Potosi Correctional Center (PCC) in Mineral Point, Missouri. He brings this action pursuant to 42 U.S.C. § 1983. The complaint names Warden Richard Jennings and John Does 1-3 as defendants. (Docket No. 1 at 2-3). Defendants are sued in both their official and individual capacities.

In the complaint, plaintiff states that on December 1, 2017, he was walking to the dining room when he stumbled on "broken concrete and fell head first onto the concrete sidewalk." (Docket No. 1 at 3). He further states that institutional rules required him to walk on the concrete sidewalks or be subject to disciplinary action. Plaintiff alleges that the "Warden and Doe defendants are responsible to keep Potosi safe."

As a result of his fall, plaintiff asserts that both his shoulders were broken, that the humerus bone in each arm was fractured, that he lost a toenail and part of a tooth, and that he received abrasions and contusions on his face, hands, and knees. (Docket No. 1 at 5). Plaintiff was initially treated in the "medical room" at PCC. Two or three hours later, however, he was taken to the

emergency room at Washington County Hospital, where his left shoulder and right toe were x-rayed. It was determined that plaintiff's left shoulder was broken. Thereafter, plaintiff was taken back to PCC and held in a single-man room. His right shoulder was later x-rayed, revealing that it was broken as well. (Docket No. 1 at 5-6). Plaintiff was placed "under hospice care, with help with all meals and someone to sit with him." (Docket No. 1 at 6). He was under hospice care until his release back to general population on April 19, 2018. In total, plaintiff spent five months in hospice care. He states that he required therapy, and that he has not fully recovered his range of motion. He also states that he suffers periodic pain and is limited in his activities.

Attached to plaintiff's complaint are copies of his informal resolution request (IRR), IRR response, offender grievance request, grievance response, offender grievance appeal, and grievance appeal response. (Docket No. 1-2). These attachments will be treated as part of the pleadings.[1] In the IRR, plaintiff states that he was injured after stepping into "a patch of missing and [dilapidated] concrete that is part of the sidewalk." (Docket No. 1-2 at 3). He states that the portion of the sidewalk where he was injured "should have been fixed when the rest of the sidewalk was fixed earlier in 2017." Plaintiff asserts that his injuries were "the result of pure negligence and deliberate indifference." The IRR response given to plaintiff indicates that plaintiff was not actually injured while walking on the sidewalk, and that the sidewalks themselves are in compliance with regulations. (Docket No. 1-2 at 5).

In his offender grievance and offender grievance appeal, plaintiff repeats his assertion that he was injured while on the sidewalk. (Docket No. 1-2 at 8, 12). He further states that the prison administration was aware of this spot, because several food carts had been upset in the area. (Docket No. 1-2 at 12). The grievance response and grievance appeal response, however, found

---

[1] *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

4

that plaintiff was not walking on the actual sidewalk, but had been "taking a shortcut from the main sidewalk onto an added portion of uneven concrete." (Docket No. 1-2 at 10, 13).

Plaintiff is seeking $500,000 in damages for the five months he spent in hospice care. (Docket No. 1 at 8). He further seeks $500,000 in punitive damages, "because of the negligence…of the warden." Plaintiff also asks "for the many, many sidewalks and concrete areas with cracks that are in violation of federal and state law to be repaired or replaced."

**Discussion**

Plaintiff is a pro se litigant who brings this action pursuant to 42 U.S.C. § 1983 against Warden Jennings and John Does 1-3. He seeks damages based on injuries he suffered from a fall while walking on a sidewalk. Having reviewed the complaint, and for the reasons discussed below, this action must be dismissed for failure to state a claim.

A. **Official Capacity Claims**

Plaintiff's official capacity claims against Warden Jennings and John Does 1-3 must be dismissed. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

5

Here, Warden Jennings and John Does 1-3 are alleged to be employed at PCC by the Missouri Department of Corrections. As such, plaintiff's official capacity claims against defendants are actually claims against the State of Missouri itself. In order to prevail on such claims, plaintiff must establish the governmental entity's liability for the alleged conduct. *See Kelly*, 813 F.3d at 1075.

To the extent that plaintiff is seeking money damages, plaintiff has failed to state a claim because the State of Missouri is not a "person." "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (stating that "a state is not a person for purposes of a claim for money damages under § 1983").

To the extent that plaintiff is seeking injunctive relief, he has still failed to state a claim, because he has not demonstrated that the Missouri Department of Corrections is liable for a constitutional violation due to an official policy, an unofficial custom, or a deliberately indifferent failure to train. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); and *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

First, plaintiff has not shown the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the…official who

has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). A policy can be a policy statement, ordinance, regulation, or decision officially adopted and promulgated by an entity's governing body. *See Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992). Plaintiff's "Statement of Claim" includes no factual allegations showing that his constitutional rights were violated due to a Missouri Department of Corrections policy.

Second, plaintiff has not established a claim of liability based on an unconstitutional custom. That is, he has not demonstrated:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). Specifically, plaintiff has alleged no facts regarding a widespread, persistent pattern of misconduct, much less that policymaking officials were deliberately indifferent to or tacitly authorized such misconduct.

Finally, plaintiff has not asserted facts establishing a deliberately indifferent failure to train or supervise. That is, he has not alleged a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

For the above-stated reasons, plaintiff has failed to state an official capacity claim against Warden Jennings and John Does 1-3. Therefore, those claims must be dismissed.

### B. Individual Capacity Claim Against Warden Jennings

Plaintiff has failed to state an individual capacity claim against Warden Jennings. Liability in a § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

Plaintiff has presented no factual allegations connecting Warden Jennings to the alleged deprivation of plaintiff's rights. In his statement of claim, plaintiff broadly asserts that Warden Jennings has a responsibility to keep PCC safe. However, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). While plaintiff asserts in his IRR and grievance that "staff and administration" were aware of the problem, he provides no factual support for this contention. Specifically, there are no facts indicating that Warden Jennings knew of the condition of the sidewalk area where plaintiff fell, much less that he failed to act on such knowledge. Plaintiff's conclusory statement to the contrary is not entitled to the presumption of truth. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level").

Moreover, plaintiff has failed to state a claim under 42 U.S.C. § 1983 because he has not asserted a constitutional violation. *See Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 934 (8th Cir. 2016) (explaining that a § 1983 claim requires plaintiff to "allege the violation of a right secured by the Constitution and laws of the United States"). To state a viable Eighth Amendment claim, a plaintiff must allege facts demonstrating a substantial risk of serious harm to his health or safety, and that the defendant was deliberately indifferent to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). However, negligence, even gross negligence, falls short of deliberate indifference as a matter of law. *See Patterson v. Kelley*, 902 F.3d 845, 852 (8th Cir. 2018). *See also Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005) (stating that "[d]eliberate indifference includes something more than negligence"); *Thornton v. Phillips Cty., Ark.*, 240 F.3d 728, 729 (8th Cir. 2001) (affirming dismissal of claim against paramedics who allegedly injured plaintiff after plaintiff fell down jail steps, because the claim alleged no more than negligence); and *Standish v. Bommel*, 82 F.3d 190, 191 (8th Cir. 1996) (stating that "not all unsafe conditions are cruel and unusual punishment under the Eighth Amendment" and that "mere negligence does not violate the Eighth Amendment").

Similarly, with regard to the Fourteenth Amendment, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2472 (2015). Accordingly, "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). *See also Walker v. Reed*, 104 F.3d 156, 157-58 (8th Cir. 1997) (explaining that inmate who slipped and fell on wet floor in prison bathroom did not state a cognizable § 1983 claim, because "mere negligence on the part of prison officials is not a violation of a state prisoner's due process rights under the Fourteenth Amendment").

9

Here, plaintiff's claim against Warden Jennings amounts to a claim of negligence. Indeed, plaintiff himself characterizes this as a negligence action. The essence of plaintiff's claim is that Warden Jennings had a duty to keep him safe, and that he breached that duty by failing to maintain the sidewalks in PCC. There are no facts to indicate that plaintiff was forced to walk in this specific area, or that he was shackled, or that he was pushed or otherwise made to fall by a correctional officer. Instead, plaintiff's allegations are in the nature of a "slip and fall," which does not, without more, amount to a constitutional violation. *See Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (collecting cases); and *Ely v. Bowers*, 2007 WL 4205802, at *1 (E.D. Mo. 2007) (explaining that plaintiff's allegation that he fell on "a broken and unlevel section of the sidewalk" was "not sufficient to establish the type of special or unique circumstances that would turn this case into one arising under the Constitution"). As noted above, not all unsafe conditions in a prison violate an inmate's constitutional rights. More specifically, negligence does not rise to the level of a constitutional violation under either the Eighth or Fourteenth Amendment. Therefore, plaintiff's individual capacity claim against Warden Jennings must be dismissed.

## C. Individual Capacity Claims Against John Does 1-3

Plaintiff has also failed to state individual capacity claims against John Does 1-3. As with Warden Jennings, plaintiff alleges no facts to connect the Doe defendants to the challenged action. *See Bitzan*, 916 F.3d at 717. The only allegation against the Doe defendants is plaintiff's assertion that the "Doe defendants are responsible" for keeping PCC safe. Plaintiff does not, however, identify the roles occupied by John Does 1-3 or specify how they were responsible for plaintiff falling on an uneven sidewalk. In short, plaintiff has not established a causal link to, and direct responsibility for, the purported deprivation of his rights. *Madewell*, 909 F.2d at 1208.

Furthermore, plaintiff has not demonstrated that John Does 1-3 violated a constitutional right, which is required to state a § 1983 claim. *See Wong*, 820 F.3d at 934. Instead, plaintiff's factual allegations, such as they are, amount to a negligence claim. As explained above, however, negligence does not violate the Eighth or Fourteenth Amendments. *See Standish*, 82 F.3d at 191 (stating that "mere negligence does not violate the Eighth Amendment"); and *Daniels*, 474 U.S. at 328 (stating that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"). Therefore, plaintiff's individual capacity claims against John Does 1-3 must be dismissed.

### D. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 2). The motion will be denied as moot as this action is being dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $9.13 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name: (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 2) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 27th day of January, 2020.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE